PEOPLE v SEEBURGER

Docket No. 193635. Submitted July 3, 1997, at Grand Rapids. Decided September 12, 1997, at 9:20 A.M.

Jennifer A. Seeburger, a single mother, pleaded guilty in the 75th District Court, James E. Wilson, J., of operating a vehicle while under the influence of intoxicating liquor. She was sentenced to one year of probation, fined $200, and ordered to attend counseling and pay $100 in attorney fees. In addition, her driver's license was suspended for six months. The court granted her an order that ordered the Secretary of State to issue a restricted license that allowed her to drive to and from her place of employment. The court then modified the order to require the issuance of a license allowing her to drive her children to and from school, church, and day care on the basis that, for a working single parent, transporting her children to and from the place where child care is provided is within the scope of an occupation. The prosecution appealed, and the Midland Circuit Court, Paul J. Clulo, J., reversed the order. The defendant appealed by leave granted.

The Court of Appeals *held*:

1. Subsections 6, 7, and 10 of MCL 257.625b; MSA 9.2325(2) allow the court to order the issuance of a restricted driver's license to a person who has been convicted of an alcohol-related driving offense and delineates the conditions the person must meet to obtain a restricted license and the circumstances under which the person may drive.

2. The statute is restrictive and exhaustive in terms of whether a court has discretion to vary or expand upon the circumstances under which a restricted driver's license shall issue.

3. The term "occupation" in subsection 7(b) of § 625b does not include child rearing as the second career of a working single parent.

4. The statute does not include driving children to and from day care and school within the exhaustive list of circumstances under which a person convicted of an alcohol-related driving offense may continue to operate a vehicle.

Affirmed.

1. LICENSES — DRIVER'S LICENSES — RESTRICTED LICENSES.

Subsections 6, 7, and 10 of § 625b of the Michigan Vehicle Code allow a court to order the Secretary of State to issue a restricted driver's license to a person who has been convicted of an alcohol-related driving offense; subsections 7 and 10 delineate the conditions the person must meet to obtain a restricted license and the circumstances under which the person may drive; the delineation of conditions and circumstances is restrictive and exhaustive and does not allow the court discretion to vary or expand upon the conditions and circumstances (MCL 257.625b[6],[7],[10]; MSA 9.2325[2][6],[7],[10]).

2. LICENSES — DRIVER'S LICENSES — RESTRICTED LICENSES — WORDS AND PHRASES — OCCUPATION.

The term "occupation" in the section of the Michigan Vehicle Code delineating the circumstances under which a person who has been issued a restricted driver's license following a conviction of an alcohol-related driving offense may drive does not include child rearing as the second career of a working single parent (MCL 257.625b[7][b]; MSA 9.2325[2][7][b]).

3. LICENSES — DRIVER'S LICENSES — RESTRICTED LICENSES — DRIVING CHILDREN TO DAY CARE AND SCHOOL.

The exhaustive list of circumstances under which a person convicted of an alcohol-related driving offense may be issued a restricted license that allows the person to continue to operate a vehicle does not include driving the person's child to and from day care and school (MCL 257.625b[6],[7],[10]; MSA 9.2325[2][6],[7],[10]).

*Frank J. Kelley*, Attorney General, *Thomas L. Casey*, Solicitor General, *Norman W. Donker*, Prosecuting Attorney, and *Geoffrey K. Rettig*, Assistant Prosecuting Attorney, for the people.

*Patricia T. Morris*, for the defendant.

Before: SAAD, P.J., and NEFF and REILLY, JJ.

PER CURIAM. This Court granted defendant's application for leave to appeal in order to decide whether MCL 257.625b(7); MSA 9.2325(2)(7) allows a driver with a restricted license to transport children to and

from day care and school when the restricted driver is a working single parent. We hold that it does not.

I

FACTS

Following a guilty plea, defendant (a single mother) was convicted in the district court of operating a vehicle while under the influence of intoxicating liquor (OUIL), MCL 257.625(1)(a); MSA 9.2325(1)(a). Defendant was sentenced to one year of probation, fined $200, and ordered to attend counseling and to pay $100 in attorney fees. In addition, her driver's license was suspended for six months. MCL 257.625(1)(a); MSA 9.2325(1)(a). However, pursuant to MCL 257.625b(7)(a); MSA 9.2325(2)(7)(a), the court granted defendant a restricted license, allowing her to drive to and from her place of employment (a restaurant), and to counseling appointments, upon expiration of a "hard" thirty-day suspension.

Defendant moved for a modified restricted license to permit her to drive her six-year-old child to and from school and church, and to drive her four-year-old child to and from day care. Defendant claimed that, as a single mother with two children, she needed a less restrictive license in order to transport her children and maintain her employment working irregular hours. Defendant argued that § 625b(7)(a) is permissive and that the statute's list of circumstances under which a restricted license could issue "is not preclusive or exhaustive." Noting that MCL 257.625b(7)(b); MSA 9.2325(2)(7)(b) expressly allows for a restricted license for driving "[i]n the course of the person's employment or occupation," defendant also argued that child rearing could be considered an occupation

as the term is used in the statute. The district court granted defendant's motion on the basis of the rationale that, for a working single parent, transporting her children to and from the place where child care is provided is within the course of an occupation. However, the district court refused to hold that this task would also be within the course of employment.

The prosecution appealed to the circuit court, claiming that the duties and responsibilities of raising children do not fall within the statutory definition of "occupation" as that term is used for granting a restricted driver's license following a conviction of OUIL. Defendant maintained that the statute is permissive, that the term "occupation" as used in the statute encompasses child raising, and that either § 625b(7)(a) (allowing a restricted license for driving to and from one's residence and work location) or § 625b(7)(b) (allowing a restricted license for driving in the course of one's employment or occupation) permitted a ruling that driving children to day care or school was necessary to maintain employment. The circuit court held that the clear and unambiguous language of the statute did not support the district court's decision and if the Legislature had intended to include parenting duties in the list of exceptions to a suspended license, it would have expressly set forth such an exception.

Defendant sought leave to appeal the circuit court's decision to this Court. Although defendant's six-month license suspension had already expired and her application was technically moot, leave was granted because the issue generally tends to escape judicial review.

II

THE STATUTORY PROVISIONS AT ISSUE

MCL 257.625b(6); MSA 9.2325(2)(6) provides that when a person is convicted of an alcohol-related driving offense, the court must either revoke or suspend the person's driver's license for a period of six months to two years, depending upon the severity of the offense. The statute also provides that, if the court finds compelling circumstances (as delineated in subsection 10 of § 625b), sufficient to warrant the issuance of a restricted license to a person, the court may order the Secretary of State to issue to the person a restricted license during all or a specified portion of the suspension. However, a restricted license shall not be issued during the first thirty days of the suspension.

MCL 257.625b(10); MSA 9.2325(2)(10) provides the conditions that must be met before a restricted license may be issued:

> The court shall not order the secretary of state to issue a restricted license unless the person states under oath, and the court finds pursuant to testimony taken in open court or pursuant to statements contained in a sworn affidavit on a form prescribed by the state court administrator, that both of the following are true:
>
> (a) The person needs vehicular transportation to and from his or her work location, place of alcohol or drug education treatment, court probation department, court-ordered community service program, or educational institution, or a place of regularly occurring medical treatment for a serious condition, or in the course of the person's employment or occupation.
>
> (b) The person is unable to take public transportation and does not have any family members or other individuals

able to provide transportation to a destination or for a purpose described in subdivision (a).

MCL 257.625b(7); MSA 9.2325(2)(7) provides those circumstances under which a person to whom a restricted license has been issued may drive:

> A restricted license issued pursuant to an order under subsection (6) shall permit the person to whom it is issued to drive under 1 or more of the following circumstances:
>
> (a) To and from the person's residence and work location.
>
> (b) In the course of the person's employment or occupation.
>
> (c) To and from the person's residence and an alcohol or drug education or treatment program as ordered by the court.
>
> (d) To and from the person's residence and the court probation department or a court-ordered community service program, or both.
>
> (e) To and from the person's residence and an educational institution at which the person is enrolled as a student.
>
> (f) To and from the person's residence or work location and a place of regularly occurring medical treatment for a serious condition for the person or a member of the person's household or immediate family.

In summary, subsection 6 of § 625b allows the court to issue a restricted driver's license to a person who has been convicted of an alcohol-related driving offense; subsections 10 and 7 of § 625b work in conjunction to delineate the conditions a person must meet to obtain a restricted license, and the circumstances under which the person may drive.

### III

#### APPLICATION OF THE STATUTE

Defendant argues that, in applying the statute to the facts of this case, the circuit court erred in reversing the district court's decision for three reasons. Defendant argues (1) that the statute as written is permissive, not restrictive, and therefore allows a court to fashion an appropriate circumstance under which a restricted licensee may drive, even if the circumstance is not specifically delineated in the statute; (2) that the term "occupation," as used in subsection 7 of § 625b, should be interpreted to include child rearing as the second career of a working single parent, thereby allowing the parent to drive the parent's children to and from day care or school; and (3) because driving her children to and from day care and school is necessary to allow defendant to maintain her employment, this circumstance falls under either the provision allowing persons to drive "[t]o and from the person's residence and work location," or "[i]n the course of the person's employment or occupation" and is therefore allowed under the statute.

This Court reviews a question of statutory interpretation de novo as an issue of law. *USAA Ins Co v Houston General Ins Co*, 220 Mich App 386, 389-390; 559 NW2d 98 (1996), states:

> The primary goal of statutory interpretation is to ascertain and give effect to the intent of the Legislature in enacting a provision. *Farrington v Total Petroleum, Inc*, 442 Mich 201, 212; 501 NW2d 76 (1993). Statutory language should be construed reasonably, keeping in mind the purpose of the statute. The first criterion in determining intent is the specific language of the statute. If the statutory lan-

guage is clear and unambiguous, judicial construction is neither required nor permitted, and courts must apply the statute as written. *Barr v Mt Brighton Inc*, 215 Mich App 512, 516-517; 546 NW2d 273 (1996). However, if reasonable minds can differ regarding the meaning of a statute, judicial construction is appropriate. *Yaldo v North Pointe Ins Co*, 217 Mich App 617, 620-621; 552 NW2d 657 (1996).

If judicial construction is warranted, this Court must construe the statute according to the common and approved usage of the language. *Jordan v Jarvis*, 200 Mich App 445, 451; 505 NW2d 279 (1993). Reference to dictionary definitions is appropriate in construing the language. *Id.* In interpreting and applying the statute at issue to the facts of this case, we decline to accept defendant's arguments as true.

A

IS THE STATUTE PERMISSIVE OR RESTRICTIVE?

The clear language of the statute supports the conclusion that the statute is restrictive, not permissive, in terms of whether a trial court has discretion to vary or expand upon the circumstances under which a restricted driver's license shall issue. The statute provides that, under subsection 6 of § 625b, a trial court *may* issue a restricted driver's license to a person who has been convicted of an alcohol-related driving offense. The word "may," as used within the statute, indicates that a trial court has discretion whether to issue a restricted license.

However, under subsection 10 of § 625b, the provision that delineates the conditions that a person must meet before a restricted license may be issued, a trial court *shall not* order the Secretary of State to issue a restricted license unless the person establishes a need

for transportation under one of the circumstances listed in subsection 7 of 625b, and establishes that public transportation is not available. In addition, under subsection 7 of 625b, the provision that lists the circumstances under which a person may drive with a restricted license, a trial court *shall* permit the person to drive under one or more of the circumstances listed. The word "shall" indicates a mandatory, nondiscretionary provision. *Jordan*, *supra* at 451. Because subsections 10 and 7 of § 625b use the word "shall" in their designations, and because these provisions qualify each other, we conclude that the subsections must be read as restrictive and exhaustive.

Our conclusion is supported by the legislative history of the statute. For example, in 1994 PA 448-450, effective May 1, 1995, the Legislature amended Michigan's drunk driving law as part of a "cleanup" of several problems that had been discovered after the 1991 act had gone into effect. See House Legislative Analysis, HB 4586, 5745, and SB 631, January 20, 1995. The perceived rationale of the amendment was to "close loopholes, tighten procedures, improve reporting, and clarify standards." *Id.*, p 4. As part of the amendment, subsection 7 of § 625b was amended to include part f, allowing a restricted license to issue for the purpose of driving to and from regularly occurring medical treatment for an offender or member of the offender's immediate family. Considering the fact that the Legislature felt the need to create a statutory exception for medical care, it is reasonable to conclude that the Legislature believed that the statute as originally written was exhaustive and that, absent an express exception, a restricted licensee would not have been

allowed to drive to obtain medical care. Therefore, we conclude that to consider the statute as allowing defendant the opportunity to drive her children to and from school and day care, in the absence of a specific express provision to do so, would be inconsistent with the legislative history and the purpose of tightening sanctions and restricting judicial discretion with respect to granting licenses.

B

### DOES THE TERM "OCCUPATION" ENCOMPASS CHILD REARING AS USED WITHIN THE STATUTE?

Defendant argues that the term "occupation," as used within the statute, should be interpreted to include child rearing as the second career of a working single parent. While the statute does not define "occupation," its common meaning does not support defendant's contention.

"Where a statute does not define one of its terms it is customary to look to the dictionary for a definition." *People v Vezina*, 217 Mich App 148, 151; 550 NW2d 613 (1996). "Occupation" is defined as: "That which principally takes up one's time, thought, and energies, especially, one's regular business or employment; also whatever one follows as the means of making a livelihood." Black's Law Dictionary (rev 6th ed). This definition indicates that the term "occupation" includes activities for which one receives remuneration. Therefore, the statute cannot be read to include those activities that take up a significant amount of one's time and energy, but for which one receives no remuneration, such as child rearing. There is no basis to conclude that the result is any different for a working single parent.

C

## WHETHER DRIVING CHILDREN TO AND FROM DAY CARE AND SCHOOL IS NECESSARY TO MAINTAIN EMPLOYMENT AND THUS ENCOMPASSED WITHIN THE STATUTE?

Defendant also argues that, because driving her children to and from day care and school is necessary to allow defendant to maintain her employment, this circumstance falls under either the provision to drive "[t]o and from the person's residence and work location," or "[i]n the course of the person's employment or occupation" and is therefore allowed under the statute. See MCL 257.625b(7)(a),(b); MSA 9.2325(2)(7)(a),(b). Defendant relies upon *Iowa Dep't of Transportation v Iowa Dist Court for O'Brien Co*, 540 NW2d 40 (Iowa, 1995), in support of this contention. There, the Supreme Court of Iowa affirmed a decision that, under the Iowa equivalent of Michigan's drunk driving law, Iowa Code § 321J.4(8) (1993), the district court had not exceeded its authority in granting a single father a restricted license that permitted him "to drive his children to day care in conjunction with employment . . . ." *Iowa Dep't of Transportation, supra* at 41.

Although Iowa's statute is similar to the Michigan statute in some respects, it is far more broad. The Iowa statute provides that a court may issue a restricted license if the license is "necessary for the person to maintain the person's present employment." Iowa Code § 321J.4(8). It allows the trial court to determine what is necessary to maintain employment, and then measure the scope of the restricted license for employment purposes. The Michigan statute, on the other hand, specifically delineates those circumstances under which a restricted license may

issue. MCL 257.625b(7),(10)(a),(b); MSA 9.2325(2)(7), (10)(a), (b). While allowing for circumstances other than employment to be considered, the Michigan statute specifically designates that the scope of the restricted license be limited to those situations described in subsections 7 and 10 of § 625b.

Considering the differences between the Iowa and Michigan statutes, we are not persuaded by the holding of the Iowa case cited by defendant.

IV

CONCLUSION

Although this Court is sympathetic to the unique demands of a working single parent, we must keep in mind the legislative intent behind Michigan's drunk driving law and give full effect to that intent. The Legislature, in enacting the statute, clearly intended to deter the act of drunk driving and to provide an exclusive list of those limited circumstances under which a defendant convicted of this offense may continue to operate a vehicle. To interpret this language otherwise would be to pervert the statutory purpose behind it. See *Rowell v Security Steel Processing Co*, 445 Mich 347, 354; 518 NW2d 409 (1994). We recognize that the lack of a designated statutory provision that accommodates the special child care needs of working single parents may have created a hardship that was neither anticipated nor intended. However, the proper remedy lies with the Legislature, not with this Court.

Affirmed.